**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DECKERS OUTDOOR CORPORATION,

        Plaintiff,

v.

A AO, et al.,

        Defendants.

Case No. 25-cv-13065

**Judge Elaine E. Bucklo**

**Magistrate Judge Keri L. Holleb Hotaling**

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT KIDMI'S MOTION TO VACATE DEFAULT JUDGMENT**

Plaintiff Deckers Outdoor Corporation ("Deckers" or "Plaintiff") responds in opposition

to Defendant KIDMI's Motion to Vacate Default Judgment [42] (the "Motion").

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ii

BACKGROUND ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    I.   LEGAL STANDARD.................................................................................................. 2

    II.  DEFENDANT'S MOTION SHOULD BE DENIED AS UNTIMELY ........................... 3

    III. DEFENDANT'S RULE 60(B)(1) ARGUMENT FAILS.................................................. 4

        A.  Defendant Failed to Establish Good Cause for its Default ........................................... 5

        B.  Defendant Failed to Establish Quick Action ................................................................. 5

        C.  Defendant Failed to Establish a Meritorious Defense .................................................. 6

    IV. DEFENDANT IS NOT ENTITLED TO RELIEF UNDER RULE 60(B)(4) .................... 9

        A.  Defendant Was Properly Served Under Rule 4(f)(3)...................................................... 9

            i.   The Hague Convention Does Not Apply .................................................................. 9

            ii.  Rule 4 Does Not Require Service Through the Hague Convention ..................... 11

            iii. Electronic Service Is Not Prohibited by the Hague Convention........................... 13

                a.  Smart Study Rendered Rule 4(f)(3) Superfluous........................................... 13

                b.  Smart Study's Interpretation of the Hague Convention Was Erroneous ........ 15

                c.  China Has Not Objected to E-mail or Electronic Publication ........................ 17

CONCLUSION.................................................................................................................... 18

## TABLE OF AUTHORITIES

**CASES**

*Acosta v. DT & C Glob. Mgmt., LLC,*
   874 F.3d 557 (7th Cir. 2017) ...................................................................................... 3, 4

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,*
   751 F.3d 796 (7th Cir. 2014) ........................................................................................ 10

*AngioDynamics, Inc. v. Biolitec AG,*
   780 F.3d 420 (1st Cir. 2015) ......................................................................................... 12

*Bell v. Eastman Kodak Co.,*
   214 F.3d 798 (7th Cir. 2000) ........................................................................................... 2

*Black v. Lane,*
   22 F.3d 1395 (7th Cir. 1994) ............................................................................................ 7

*Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.,*
   687 F.2d 182 (7th Cir. 1982) ............................................................................................ 7

*C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.,*
   726 F.2d 1202 (7th Cir. 1984) .......................................................................................... 5

*Casio Comput. Co. v. Noren,*
   35 F. App'x 247 (7th Cir. 2002) ............................................................................... 2, 3, 4

*Chan v. Korean Air Lines, Ltd.,*
   490 U.S. 122 (1989) ........................................................................................................ 10

*Chanel, Inc. v. Handbagstore,*
   2021 U.S. Dist. LEXIS 122842 (S.D. Fla. June 30, 2021) ......................................... 10

*Chapter 4 Corp. v. The P'ships, et al.,*
   2021 WL 1906461 (N.D. Ill. May 12, 2021) ................................................................ 4

*Chase Int'l, Inc. v. Link & Pan of Texas, Inc.,*
   1995 WL 506056 (N.D. Ill. Aug. 17, 1995) ................................................................. 2

*Compañía De Inversiones Mercantiles v. Grupo Cementos de Chihuahua S.A.B. de C.V.,*
   970 F.3d 1269 (10th Cir. 2020) ......................................................................... 12, 14, 17

*Coney Island Auto. Parts Unlimited, Inc. v. Burton,*
   607 U.S. 155 (2026) ................................................................................................... 3, 4

ii

*De Gazelle Group, Inc. v. Tamaz Trading Establishment*,
817 F.3d 747 (11th Cir. 2016) .......................................................................... 12

*Deckers Outdoor Corp. v. Project Cloud LLC*,
2026 U.S. Dist. LEXIS 3680 (C.D. Cal. Jan. 7, 2026) ........................................ 6, 8

*Deckers Outdoor Corp. v. Romeo & Juliette*,
Case No. 26-1682 (Fed. Cir. 2026) ..................................................................... 6

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*,
2026 U.S. Dist. LEXIS 66958 (C.D. Cal. Mar. 20, 2026) ......................................... 6

*Deckers Outdoor v. Last Brand, Inc.,*
2025 U.S. Dist. LEXIS 195922 (N.D. Cal. 2025) ..................................................... 6

*Di Vito v. Fid. & Deposit Co.*,
361 F.2d 936 (7th Cir. 1966) ................................................................................. 3

*Enovative Techs., LLC v. Leor*,
622 F. App'x 212 (4th Cir. 2015) ........................................................................... 12

*Fairly Odd Treasures, LLC v. The P'ships, et al.*,
2020 WL 8093511 (N.D. Ill. Oct. 28, 2020) ............................................................ 4

*Hallmark Licensing LLC v. The P'ships, et al.*,
No. 24-cv-00112 (N.D. Ill. Mar. 31, 2025), ECF No. 70 (Bucklo, J.) ...................................... 10

*Hangzhou Chic Intelligent Tech. Co. v. P'ships, et al.*,
2021 U.S. Dist. LEXIS 64064 (N.D. Ill. Apr. 1, 2021) ...................................................... 17, 18

*Henderson v. United States*,
517 U.S. 654 (1996) .............................................................................................. 16

*In re Oneplus Tech. Co.*,
2021 U.S. App. LEXIS 27282 (Fed. Cir. Sep. 10, 2021) ...................................................... 12

*In re Vista-Pro Auto.*,
109 F.4th 438 (6th Cir. 2024) ................................................................................. 4

*Jones v. Jones*,
217 F.2d 239 (7th Cir. 1954) ................................................................................. 9

*Jones v. Phipps*,
39 F.3d 158 (7th Cir. 1994) ............................................................................. 3, 4, 5

iii

*Kei & Chris LLC v. P'Ships, et al.*,
No. 24-cv-12680 (N.D. Ill. Feb. 3, 2026), ECF No. 127 ........................................................ 5

*Kendra Scott, LLC v. The Entities, et al.*,
No. 25-cv-03696 (N.D. Ill. Oct. 28, 2025) (Bucklo, J.) (ECF No. 84) .................................... 17

*Kopec v. City of Elmhurst*,
193 F.3d 894 (7th Cir. 1999) ................................................................................................... 14

*Leadership Council for Metro. Open Cmtys. v. Hu*,
2000 U.S. App. LEXIS 8726 (7th Cir. Apr. 27, 2000) ............................................................. 4

*Luxottica Grp. S.p.A. v. P'ships, et al.*,
2019 U.S. Dist. LEXIS 93466 (N.D. Ill. June 4, 2019) .......................................................... 16

*Marcure v. Lynn*,
992 F.3d 625 (7th Cir. 2021) ................................................................................................... 12

*Milwaukee Elec. Tool Corp. v. Individuals, et al.*,
2025 U.S. Dist. LEXIS 216016 (N.D. Ill. Nov. 3, 2025).......................................................... 18

*Nagravision SA v. Gotech Int'l Tech. Ltd.*,
882 F.3d 494 (5th Cir. 2018) ................................................................................................... 11

*NBA Props. v. P'ships et al.*,
549 F. Supp. 3d 790 (N.D. Ill. 2021) ..................................................................... 11, 12, 13, 17

*New NGC, Inc. v. Alpinebay, Inc.*,
2019 U.S. Dist. LEXIS 236470 (N.D. Ill. Sep. 26, 2019) ......................................................... 8

*Nuance Communs., Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010)............................................................................................... 12

*O'Brien v. R.J. O'Brien & Assocs., Inc.*,
998 F.2d 1394 (7th Cir. 1993) ................................................................................................... 9

*Peanuts Worldwide LLC v. P'ships, et al.*,
347 F.R.D. 316 (N.D. Ill. 2024).................................................................... 12, 13, 16, 17, 18

*Piechowicz v. P'ships, et al.*,
2024 U.S. Dist. LEXIS 176326 (S.D.N.Y. Sep. 24, 2024)....................................................... 10

*Planet Corp. v. Sullivan*,
702 F.2d 123 (7th Cir. 1983) ..................................................................................................... 3

*Pretzel & Stouffer v. Imperial Adjusters*,

28 F.3d 42 (7th Cir. 1994) ......................................................................................... 3

*Republic of Sudan v. Harrison*,
   587 U.S. 1 (2019) ................................................................................................ 12

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ................................................................. 11, 12, 13

*Romag Fasteners, Inc. v. Fossil Grp., Inc.*,
   140 S. Ct. 1492 (2020) ....................................................................................... 13

*Seiichi Oku v. Oyster Gaston5, LLC*,
   2020 U.S. Dist. LEXIS 177209 (N.D. Ill. Sep. 28, 2020) ......................................... 4

*SignalQuest, Inc. v. Tien-Ming Chou & Oncque Corp.*,
   284 F.R.D. 45 (D.N.H. 2012) ............................................................................. 14

*Smart Study Co. v.  Shenzhenshixindajixieyouxiangongsi*,
   164 F.4th 164 (2d Cir. 2025) ............................................... 12, 13, 14, 15, 16

*Strabala v. Zhang*,
   318 F.R.D. 81 (N.D. Ill. 2016) .......................................................................... 11

*Sullivan v. Gen. Plumbing, Inc.*,
   2007 WL 1030236 (N.D. Ill. Mar. 31, 2007) ......................................................... 4

*Swaim v. Moltan Co.*,
   73 F.3d 711 (7th Cir. 1996) ................................................................................. 5

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001) .............................................................................................. 8

*Trove Brands, Ltd. Liab. Co. v. Cal. Innovations Inc.*,
   2021 U.S. Dist. LEXIS 220983 (N.D. Ill. Nov. 16, 2021) ......................................... 7

*Turnpro LLC v. The Entities, et al.*,
   No. 21-cv-02763 (N.D. Ill. June 24, 2022) (Bucklo, J.) (ECF No. 105) ................... 13

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) ............................................................................................ 7

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) ............................................................................................ 9

*Viahart, L.L.C. v. He Gangpeng*,
   2022 U.S. App. LEXIS 3974 (5th Cir. Feb. 14, 2022) ........................................... 12

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988)........................................................................................................ 15

*Wehrs v. Wells*,
   688 F.3d 886 (7th Cir. 2012) ........................................................................................... 6

*Yates v. United States*,
   574 U.S. 528 (2015)....................................................................................................... 10

**RULES**

Fed. R. Civ. P.  4(f)....................................................................................................... 12

Fed. R. Civ. P. (f)(1)-(3) .............................................................................................. 11

Fed. R. Civ. P. 4(f)(3), Advisory Committee Note, 1993 Amendments ............................... 14, 15

Fed. R. Civ. P. 4(i)(E), Advisory Committee Note, 1963 Amendments .................................... 15

Fed. R. Civ. P. 4(h) ...................................................................................................... 11

Fed. R. Civ. P. 4(j)(1) .................................................................................................. 12

Fed. R. Civ. P. 12........................................................................................................... 5

Fed. R. Civ. P. 34(a)(1)(A)-(B)....................................................................................... 10

Fed. R. Civ. P. 60(c) ...................................................................................................... 3

Fed. R. Evid. 1001(d)..................................................................................................... 10

**OTHER AUTHORITIES**

China, Responses 2022 Questionnaire relating to the Convention of 15 November 1965 on the
   Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ¶
   23.3............................................................................................................................ 17

Ed Stone, *UGG Tazz v. Tasman: An In-Depth Comparison* (Jun. 26, 2024),
   https://bootworld.com/blogs/advantage/ugg-tazz-vs-tasman-an-in-depth-comparison.............. 6

Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on
   the Operation of the 1965 Service Convention (2025) ........................................................... 15

**TREATIES**

Article 1 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in
   Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ...................... 9

**TREATISES**

1 Moore's Federal Practice - Civil § 4.52 (2026) ........................................................................... 14

## BACKGROUND

The UGG® Tazz®, the embodiment of the Tazz® Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. [1] ¶ 20. The UGG® Tazz® has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tazz®, and has graced the pages of many popular magazines nationwide and internationally. *Id.* Examples of the Tazz® Trade Dress' distinctive appearance as a whole are shown below (*Id.* ¶ 18):



The Tazz® Trade Dress is comprised of the following non-functional elements: (a) An embroidered braid around the opening of the upper; (b) A raised prominent seam on the front part of the upper running longitudinally down the center of the upper; (c) A raised and rounded dome shaped toe; (d) A brushed suede-like exterior; and (e) A thick, platform outsole. [1] ¶ 17.

Defendant is an e-commerce store operator selling footwear products in the U.S. that infringe Deckers' Tazz® Trade Dress (the "Infringing Product"). [1] ¶ 3; *see* [1-1] at 35-37. The information displayed on Defendant's Amazon store states that the entity operating the store is "Yiwushisuoyingdianzishangwuyouxiangongsi" with the address "北苑街道, 丹溪北路612号418室, 义乌市, 浙江, 322000, CN." Ex. 1, Declaration of Justin R. Gaudio ("Gaudio Decl.") ¶ 3. Defendant represents that an entity called that "Yi Wushisuoying E-commerce Co., Ltd." operates

1

the KIDMI seller alias, and its address is "Beiyuan Subdistrict, Room 418, No. 612 Danxi North Road, Yiwu City, Zhejiang Province, 322000, China." [42] at 2. Deckers investigated these entities and searched for the purported addresses on Baidu Maps, Google Maps, and Bing Maps. Gaudio Decl. ¶¶ 3-8. The search results do not show KIDMI, Yi Wushisuoying E-commerce Co., Ltd., or Yiwushisuoyingdianzishangwuyouxiangongsi at these addresses. *See id.* As such, the address listed on Defendant's Amazon store is false, incomplete, or inaccurate. *See id.* ¶ 9.

On November 20, 2025, the Court entered an Order authorizing Deckers to "provide notice of these proceedings to Defendants, including service of process pursuant to Fed. R. Civ. P. 4(f)(3)" by electronic means. *See* [16] ¶ 2. On December 26, 2025, Deckers returned an executed summons in accordance with the Court's Order [16]. *See* [19]. On February 17, 2026, the Court entered a Final Judgment Order [35], including Defendant.

Defendant filed the Motion on March 26, 2026, over one month after the Final Judgment Order was entered. [42]. Defendant is not entitled to relief under Fed. R. Civ. P. 60(b) because this does not constitute quick action, a holiday is not good cause to set aside a default judgment, and Defendant failed to establish a meritorious defense. Defendant's argument under Fed. R. Civ. P. 60(b)(4) also fails because service was proper under Fed. R. Civ. P. 4(f)(3).

**ARGUMENT**

## I. LEGAL STANDARD

"Rule 60(b) supplies an extraordinary remedy to be granted in exceptional circumstances." *Casio Comput. Co. v. Noren*, 35 F. App'x 247, 249 (7th Cir. 2002). "[C]ollateral attack, especially in civil cases, is disfavored because of the social interest in expedition and finality in litigation." *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800-01 (7th Cir. 2000). Default judgments are not "easily wiped away[,]" *Chase Int'l, Inc. v. Link & Pan of Texas, Inc.*, 1995 WL 506056, at *1 (N.D. Ill. Aug. 17, 1995) and the Seventh Circuit has "long since moved away from the position of

2

disfavoring default judgments, and [is] therefore increasingly reluctant to set them aside." *Pretzel & Stouffer v. Imperial Adjusters*, 28 F.3d 42, 47 (7th Cir. 1994).

## II.     DEFENDANT'S MOTION SHOULD BE DENIED AS UNTIMELY

Rule 60(c) provides that "[a] motion under Rule 60(b) must be made within a reasonable time." Fed. R. Civ. P. 60(c); *see also Coney Island Auto. Parts Unlimited, Inc. v. Burton*, 607 U.S. 155, 158-62 (2026). A motion filed under Rule 60(b)(1) must show that the movant took quick action to respond to the default. *See Acosta v. DT & C Glob. Mgmt., LLC*, 874 F.3d 557, 560 (7th Cir. 2017). Regardless of the terminology, "reasonable time" and "quick action" are substantially the same standard. *See Casio*, 35 F. App'x at 251 ("to be reasonable a delay ought to have a good explanation."); *see also Planet Corp. v. Sullivan*, 702 F.2d 123, 126 (7th Cir. 1983) (quoting with approval *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (30 days held unreasonable when movant offered no explanation for his failure to challenge the ruling in question on direct appeal)); *Di Vito v. Fid. & Deposit Co.*, 361 F.2d 936, 939 (7th Cir. 1966) ("equity aids the vigilant.").

In this case, the Final Judgment Order was entered on February 17, 2026. Defendant does not dispute that it had actual notice of this case since at least December 26, 2025 and admits that it knew of the Final Judgment Order since at least February 19, 2026. Defendant also does not dispute that it received notice of Deckers' Motion for Default and Default Judgment [30]. Despite having actual notice of the case for months, Defendant ignored the proceedings and did not file its Motion until March 26, 2026. *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994) (unreasonable delay where "more than a month elapsed" before moving to vacate "while [the defendant] was fully aware of the judgment against her."). Defendant does not provide any evidence that the Lunar New Year celebration in China prevented it from filing its Motion sooner, or even explain why or how it caused its delay. *See Acosta*, 874 F.3d at 561 (failure to show evidence or explain how the hospital stay caused delay meant quick action was not established).

3

This delay was unreasonable. *See Sullivan v. Gen. Plumbing, Inc.*, 2007 WL 1030236, at *4 (N.D. Ill. Mar. 31, 2007) (three weeks unreasonable); *Seiichi Oku v. Oyster Gaston5, LLC*, 2020 U.S. Dist. LEXIS 177209, at *6 (N.D. Ill. Sep. 28, 2020) (four weeks unreasonable); *Chapter 4 Corp. v. The P'ships, et al.*, 2021 WL 1906461, at *2 (N.D. Ill. May 12, 2021) (less than five weeks unreasonable); *Phipps*, 39 F.3d at 165 (five weeks unreasonable); *Fairly Odd Treasures, LLC v. The P'ships, et al.*, 2020 WL 8093511, at *2 (N.D. Ill. Oct. 28, 2020) (six weeks unreasonable).

Defendant suggests that "motions to vacate void judgments are not subject to the same timeliness constraints as motions under other subsections of Rule 60(b)." [42] at 15. However, in January 2026, the United States Supreme Court expressly rejected the claim that litigants can seek relief from void judgments at any time. *Burton*, 607 U.S. at 159, 160. This inquiry focuses on when the defendant became aware of the relevant facts. *See Phipps*, 39 F.3d at 165 (7th Cir. 1994); *see also In re Vista-Pro Auto.*, 109 F.4th 438, 445-46 (6th Cir. 2024), *aff'd*, *Burton*, 607 U.S. 155 (the "'reasonable time' clock governing grounds (4), (5), and (6) generally 'begins ticking when the movant is or should be aware of the factual basis for the motion"). Defendant cites no authority for establishing that its delay was reasonable. In addition, regardless of the Rule 60(b) basis, reasonableness requires "a good explanation." *Casio*, 35 F. App'x at 251. Since Defendant failed to provide a good explanation, its delay is unreasonable. As such, the Motion should be denied.

## III.    DEFENDANT'S RULE 60(B)(1) ARGUMENT FAILS

Setting aside a default judgment under Rule 60(b)(1) is appropriate only if the Defendant shows (1) "good cause" for their default; (2) took "quick action to respond to the default"; and (3) have "a meritorious defense to the underlying allegations." *Acosta*, 874 F.3d at 560. "In order to have a default judgment set aside, the defendant must meet all three requirements." *Leadership Council for Metro. Open Cmtys. v. Hu*, 2000 U.S. App. LEXIS 8726, at *8-9 (7th Cir. Apr. 27, 2000) (citing *Pretzel & Stouffer*, 28 F.3d at 46). Defendant fails to meet any of the requirements.

4

### A. Defendant Failed to Establish Good Cause for its Default

The Seventh Circuit has made it clear that the "good cause" standard under Rule 60(b) is limited and applied stringently. *Phipps*, 39 F.3d at 162. This standard requires proving "extraordinary circumstances" or "excusable neglect." *Id.* at 164. "Extraordinary circumstances" arise only where "the events contributing to the default judgment have not been within the meaningful control of the defaulting party." *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1206 (7th Cir. 1984). "[N]either ignorance nor carelessness on the part of a litigant or his attorney provide grounds" for excusable neglect. *Id.*

Lunar New Year does not establish good cause for Defendant's default. As a preliminary matter, Defendant was served on December 26, 2025 [12], making its responsive pleading due January 16, 2026. *See* Fed. R. Civ. P. 12. Defendant does not dispute that it had actual notice of the lawsuit since December 2025. Lunar New Year started a month after Defendant's responsive pleading was due and ended three weeks before the Motion was filed. Additionally, there is no evidence that Defendant was unable to respond during Lunar New Year. Since Defendant failed to show good cause, it is not entitled to Rule 60(b)(1) relief. *Swaim v. Moltan Co.*, 73 F.3d 711, 722 (7th Cir. 1996) ("As we have previously discussed, [the defendant] has not identified good cause for its default; any further exposition would be superfluous.").

### B. Defendant Failed to Establish Quick Action

As discussed *supra* at 3, Defendant failed to file its Motion within a reasonable time, *i.e.*, did not take quick action. As such, Defendant is not entitled to Rule 60(b)(1) relief, and the Motion should be denied. *See Kei & Chris LLC v. P'Ships, et al.*, No. 24-cv-12680 (N.D. Ill. Feb. 3, 2026), ECF No. 127 ("Because [the defendants] failed to take quick action to correct the default, their motion to vacate default judgment is denied.").

5

### C.      Defendant Failed to Establish a Meritorious Defense

Defendant has failed to put forth a meritorious defense that warrants *vacatur* because its defenses rely on unsupported factual allegations and references to unrelated cases. General denials of the complaint's allegations, without a developed legal and factual basis, do not establish a meritorious defense.  *Wehrs v. Wells*, 688 F.3d 886, 891 (7th Cir. 2012).

### i.      The Tazz® Trade Dress Is Not Generic.

Defendant relies on the out of circuit, district court decision in *Deckers Outdoor v. Last Brand, Inc.* to claim the Tazz® Trade Dress is invalid.  *Deckers Outdoor v. Last Brand, Inc.,* 2025 U.S. Dist. LEXIS 195922 (N.D. Cal. 2025). However, that decision is involved the Tasman® trade dress whereas this case only involves the Tazz® Trade Dress.  The Tasman® involves a different trade dress, namely "[a] thick, flat outsole," while the Tazz® Trade Dress claims "[a] thick, platform outsole." [1] at ¶ 17; *Deckers Outdoor Corp. v. Project Cloud LLC*, 2026 U.S. Dist. LEXIS 3680, at *6 (C.D. Cal. Jan. 7, 2026); *see also* Ed Stone, *UGG Tazz v. Tasman: An In-Depth Comparison* (Jun. 26, 2024), https://bootworld.com/blogs/advantage/ugg-tazz-vs-tasman-an-in-depth-comparison.  Thus, the *Last Brand* decision is not relevant.[1]

Defendant otherwise asserts conclusory allegations with no evidence to support this defense.  For example, Defendant states "Deckers' supposed trade dress describes a broad category of footwear that has been produced by hundreds of manufacturers. These features and appearance are generic and commonly used in the suede-and-sheepskin slipper market, not distinctive indicators of any single source."  [42] at 9.  Defendant offers no factual basis for this statement or examples of the alleged products being produced by "hundreds of manufacturers" that feature the

---

[1] The Central District of California addressed the validity of the Tazz® Trade Dress. *See Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2026 U.S. Dist. LEXIS 66958 (C.D. Cal. Mar. 20, 2026).  An appeal of this decision is pending in the Federal Circuit. *Deckers Outdoor Corp. v. Romeo & Juliette*, Case No. 26-1682 (Fed. Cir. 2026).

Tazz® Trade Dress. *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982) ("The showing of a meritorious defense that is necessary to set aside a default requires more than the bare legal conclusions set forth in defendants' proposed answer."). Accordingly, Defendant has not established a defense of genericness.

### ii. The Tazz® Trade Dress Has Attained Secondary Meaning

"Secondary meaning is used generally to indicate that a mark or dress 'has come through use to be uniquely associated with a specific source.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992). "A plaintiff can show secondary meaning through evidence that 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'" *Trove Brands, Ltd. Liab. Co. v. Cal. Innovations Inc.*, 2021 U.S. Dist. LEXIS 220983, at *8 (N.D. Ill. Nov. 16, 2021).

Deckers was not required to *prove* secondary meaning at the pleading stage, and Defendant does not dispute that Deckers sufficiently pled the Tazz® Trade Dress attained secondary meaning. *See id.* at *10 ("At this stage, [plaintiff] need only plead a plausible 'link in the minds of consumers between the [product] and its source.'"); *see also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) ("When a default judgment is entered, facts alleged in the complaint may not be contested."). Deckers alleged that it has sold "millions of dollars' worth of the UGG® Tazz®, the embodiment of the Tazz® Trade Dress," the Tazz® Trade Dress has solicited media attention, and has been advertised at great costs to Deckers. [1] ¶¶ 20-22. Deckers' allegations are specific to the Tazz® Trade Dress. *Id.* Accordingly, Deckers has sufficiently shown that the Tazz® Trade Dress has "achieved a high degree of consumer recognition and secondary meaning."[2] *See Deckers*, 2026

---

[2] Defendant focuses on Plaintiff's comment regarding UGG® boots being featured on Oprah's Favorite Things®. [1] ¶ 7; [42] at 12-13. Plaintiff included this information as background to explain the emergence of Deckers' business and the UGG® brand generally.

U.S. Dist. LEXIS 3680, at *9 (finding Deckers sufficiently alleged the Tazz® Trade Dress attained secondary meaning through significantly similar pleadings).

Defendant's argument relies on an irrelevant trade dress application ([42] at 13) and conclusory assertions regarding secondary meaning. [42] at 12-13.  However, Defendant fails to show any evidence that there are "numerous" other products or "plethora of alternatives" featuring the Tazz® Trade Dress.

iii.     <u>Defendant Has Not Established a Defense of Functionality.</u>

Trade dress is functional if "it is essential to the use or purpose of the [product] or affects the cost or quality of the [product]." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 35, (2001); *see New NGC, Inc. v. Alpinebay, Inc.*, 2019 U.S. Dist. LEXIS 236470, at *6 (N.D. Ill. Sep. 26, 2019) ("Trade dress is functional if it is 'essential to the use or purpose' of the product or affects the product's cost or quality, or if exclusive use of the claimed trade dress would put competitors at a significant non-reputation-related disadvantage.").

Deckers has sufficiently pled that the Tazz® Trade Dress is non-functional.  [1] at ¶¶ 18-19, 25.  Specifically, Deckers has alleged that: the Tazz® Trade Dress is non-functional, visually distinctive, and unique in the footwear industry; the Tazz® Trade Dress is neither essential to its purpose, nor does it affect the cost or quality of the shoe; there are numerous other alternative designs in the market that are equally feasible and efficient; and the Tazz® Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. [1] at ¶¶ 18-19, 25. Deckers has, therefore, plausibly alleged that the Tazz® Trade Dress is non-functional.  *See Deckers*, 2026 U.S. Dist. LEXIS 3680, at *7-8 (finding Deckers adequately alleged the Tazz® Trade Dress' non-functionality where Deckers alleged that "the elements and features forming the overall design and appearance" of the Tazz® Trade Dress "are non-functional because they provide

8

no cost advantages to the manufacturer or utilitarian advantages to the consumer.”).

Defendant alleges that “[t]he features Deckers identifies as its trade dress are precisely the functional characteristics that define what a slipper is and make it comfortable, warm, and wearable.” [42] at 14. A “slipper” does not require an embroidered braid, a raised seam running longitudinally down the shoe, a rounded dome shaped toe, a suede-like exterior, or a platform outsole in order to function. Accordingly, Defendant’s argument fails as to functionality.

## IV. DEFENDANT IS NOT ENTITLED TO RELIEF UNDER RULE 60(B)(4)

Rule 60(b)(4) “applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.” *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). When the motion is based on insufficient service, Defendant has the burden to demonstrate both that (1) the judgment is void for lack of service and (2) that it had no actual notice of the suit. *Jones v. Jones*, 217 F.2d 239, 242 (7th Cir. 1954). Deckers’ properly executed return of service constitutes *prima facie* evidence of valid service that can be overcome only by a strong and convincing showing. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993).

### A. Defendant Was Properly Served Under Rule 4(f)(3)

#### i. The Hague Convention Does Not Apply

Article 1 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the “Hague Convention”) states that “[t]his Convention shall not apply where the address of the person to be served with the document is not known.” Hague Convention art. 1.

Deckers investigated the purported address listed on Defendant’s store and was unable to locate Defendant at that address. *See* Gaudio Decl. ¶¶ 3-8. Based on this investigation, Defendant’s address is unknown. *See Hallmark Licensing LLC v. The P’ships, et al.*, No. 24-cv-

00112, at 3 (N.D. Ill. Mar. 31, 2025), ECF No. 70 (Bucklo, J.) ("Plaintiff offered evidence of its reasonably diligent efforts to ascertain defendant's address—including by using the very search engine ('Baidu') that defendants argue is used in China."); *see also Piechowicz v. P'ships, et al.*, 2024 U.S. Dist. LEXIS 176326, at \*3 (S.D.N.Y. Sep. 24, 2024) (searching addresses on search engines, including Chinese search engine, is reasonable diligence).

In addition, court-ordered service completed by e-mail and electronic publication under Rule 4(f)(3) does not require transmittal of documents abroad. This is because e-mail is electronic data on a network, while a "document" as contemplated by Article 1 of the Hague Convention refers to tangible instruments.[3] The drafters could not have considered the term "document" to include e-mail, since it did not exist yet. *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 135 (1989) ("[T]o alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not an exercise of judicial functions."). Any physical "documents" in this case were electronically published to a website hosted on a U.S.-based server. Since they remained on a U.S.-based server, they were not "transmitted abroad." As a result, "service by e-mail and website posting" is completed domestically and "does not occur 'within the territory of the [PRC].'" *Chanel, Inc. v. Handbagstore*, 2021 U.S. Dist. LEXIS 122842, at \*28 (S.D. Fla. June 30, 2021). Thus, the Hague Convention does not apply, and Defendant's argument fails.

---

[3] "As a practical matter, email does not exist in any location at all." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). Moreover, U.S. law does not generally equate electronic records like e-mail to physical documents. *See, e.g., Yates v. United States*, 574 U.S. 528, 550 (2015) ("[W]hat is similar to a 'record' or 'document' but yet is not one? An e-mail[.]") (Alito, J. concurring); Fed. R. Evid. 1001(d) (distinguishing between documents and ESI); Fed. R. Civ. P. 34(a)(1)(A)-(B) (same); *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 977 (N.D. Ill. 2021) (describing e-mails as ESI).

ii.    Rule 4 Does Not Require Service Through the Hague Convention

Even if the Hague Convention applied, Defendant's argument fails because service on Defendant could have been accomplished "in *any* manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Fed. R. Civ. P. 4 (h) (emphasis added). Under Rule 4(f), Defendant could have been served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Convention]"; by the means listed in Rule 4(f)(2) that were not attempted here; "or by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1)-(3).

"The decision whether to allow alternate methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016). Authorizing service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but rather one means amongst several for serving international defendants. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). "Thus, despite that [Deckers] had not attempted service under the terms of the Convention, the Court was authorized to order that service be effected by an alternative means ... so long as [Deckers] 'ma[d]e a showing as to why alternative service should be authorized.'" *NBA Props. v. P'ships et al.,* 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021). Defendant does not dispute that Deckers made this showing.

Instead, Defendant argues that Deckers was required to complete service under Rule 4(f)(1). *See* [42] at 5 ("through the Central Authority—or through another channel specifically authorized by the Convention and not objected to by China."). "Overlooking Rule 4(f)(3) entirely[,] this argument misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3)." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018). Defendant's reliance on *Volkswagenwerk Aktiengesellschaft v. Schlunk* is misplaced, as that case does "not compel a contrary finding." *NBA*

11

*Props.*, 549 F. Supp. 3d at 798.

As the vast majority of Courts have held, attempting service through the Hague Convention before seeking alternative service is not required. *See, e.g., NBA Props.*, 549 F. Supp. 3d at 797; *In re Oneplus Tech. Co.*, 2021 U.S. App. LEXIS 27282, at \*9 (Fed. Cir. Sep. 10, 2021). This is because Rule 4(f) "is not written in a way that suggests an order of preference among [its options], and the majority view ... is that the Rule does not require a party to 'attempt service under the Convention before seeking a court order directing alternative service.'" *Peanuts Worldwide LLC v. P'ships, et al.*, 347 F.R.D. 316, 328 (N.D. Ill. 2024). Other statutes are drafted differently to include a hierarchy. C*ompare* Fed. R. Civ. P. 4(f) and Fed. R. Civ. P. 4(j)(1). *See Republic of Sudan v. Harrison*, 587 U.S. 1, 4-5 (2019) (describing 28 U.S.C. § 1608's methods as hierarchical).

This reading of the plain language of Rule 4(f) has been endorsed by most other Circuit Courts. *See AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 428-29 (1st Cir. 2015); *Enovative Techs., LLC v. Leor,* 622 F. App'x 212, 214 (4th Cir. 2015); *Viahart, L.L.C. v. He Gangpeng*, 2022 U.S. App. LEXIS 3974, at \*9 (5th Cir. Feb. 14, 2022); *Rio Props.*, 284 F.3d at 1015; *Compañía De Inversiones Mercantiles v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1294 (10th Cir. 2020); *De Gazelle Group, Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 751 (11th Cir. 2016); *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010). Conversely, the Second Circuit *Smart Study* decision, which Defendant relies on, reads a hierarchy among the methods of service into Rule 4(f) that was not supported by the plain language of Rule 4(f) or by any authority. *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 168 (2d Cir. 2025). This reasoning is contrary to the approach taken in this Circuit, which is to "give the Federal Rules of Civil Procedure their plain meaning." *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021). Finally, the Second Circuit in *Smart Study* applied a highly

12

deferential standard of review to the lower court decision. *Smart Study*, 164 F.4th at 170, 173. Accordingly, Deckers was not required to attempt service through the Hague Convention under Rule 4(f)(1) prior to seeking permission for email service under Rule 4(f)(3).

        iii.      <u>Electronic Service Is Not Prohibited by the Hague Convention</u>

"As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." *See Rio Props.*, 284 F.3d at 1014. "No other limitations are evident from the text." *Id.*; *cf. Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1495 (2020) ("Nor does this Court usually read into statutes words that aren't there."). Service of process ordered under Rule 4(f)(3) may even be completed in contravention of the foreign country's laws. *Rio Props.*, 284 F.3d at 1014.

The Hague Convention does not prohibit electronic service. *See Turnpro LLC v. The Entities, et al.*, No. 21-cv-02763, at 4-5 (N.D. Ill. June 24, 2022) (Bucklo, J.) (ECF No. 105). Nothing in the text or structure of the Hague Convention prohibits electronic service. *See NBA Props.*, 549 F. Supp. 3d at 797. Defendant has "not directed the Court to any provision of the Convention that limits a party to the methods of service enumerated in the Convention." *Id.* "[I]f the contracting states really wished to bind themselves to the 'limited universe of alternative service methods' available in 1965" they would have done so explicitly. *Peanuts*, 347 F.R.D. at 330. "In the absence of a provision affirmatively prohibiting service by email or any reason to believe the Convention bars all unenumerated methods of service," *NBA Props.*, 549 F. Supp. 3d at 798, "the 'overwhelming majority of courts in this district' [reached] the more straightforward conclusion that the Convention does not prohibit service by email." *Peanuts*, 347 F.R.D. at 330.

        *a. Smart Study Rendered Rule 4(f)(3) Superfluous*

This Court should decline to follow *Smart Study*. To determine whether the Hague Service prohibits e-mail service, *Smart Study* concluded that "[t]he relevant question is ... whether the

Convention allows for email service on the China-based defendants." 164 F.4th at 170. This was an error because "the relevant inquiry under Rule 4(f)(3) is not whether the [Hague Convention] affirmatively endorses service," but "whether the alternative service method in question is 'prohibited' by the agreement." *Compañía,* 970 F.3d at 1294; *see also* 1 Moore's Federal Practice - Civil § 4.52 (2026) ("the Tenth Circuit correctly adopted this approach to Rule 4(f)(3), holding that the inquiry is not whether the Hague Convention … affirmatively permits service; instead, it is whether the service method is 'prohibited'[.]"); *SignalQuest, Inc. v. Tien-Ming Chou & Oncque Corp.*, 284 F.R.D. 45, 48-49 (D.N.H. 2012) ("To be 'prohibited' requires ... a clear command that a course of action cannot be taken.").

By concluding that a method of service is prohibited because it was not expressly permitted by the Hague Convention, *Smart Study* made Rule 4(f)(3) superfluous. *See Kopec v. City of Elmhurst*, 193 F.3d 894, 902 (7th Cir. 1999) ("we are loathe to adopt constructions that render a statutory provision superfluous."). Rule 4(f)(1) already authorizes completing service by methods allowed by the Hague Convention. Since Rule 4(f)(1) already authorizes plaintiffs to complete service using the Hague Convention's allowed methods, under *Smart Study*, there would be no need for any plaintiff to request alternative methods not listed by the Hague Convention when it applies.

Rule 4(f)(3) is specifically meant for authorizing "special forms of service" not provided for by the Hague Convention. Fed. R. Civ. P. 4(f)(3), Advisory Committee Note, 1993 Amendments. "In such cases, the court may direct a special method of service not explicitly authorized by international agreement." *Id.* The notes to the 1963 Amendment to Rule 4(i)(E) (former Rule 4(f)(3)) reinforce this and explain that the rule "adds flexibility by permitting the court by order to tailor the manner of service to fit the necessities of a particular case." Fed. R.

14

Civ. P. 4(i)(E), Advisory Committee Note, 1963 Amendments.

Similarly, the Practical Handbook on the Operation of the 1965 Service Convention (2025) explains that "[s]ubstituted service" "refers to the situation where a document is required to be served for the purpose of legal proceedings before a court, and that court directs that the use of some alternative means of bringing the document to the attention of the party to be served will constitute, or be treated as, valid service." Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the Operation of the 1965 Service Convention (2025) ("Practical Handbook") ¶ 96. "In the United States, this type of service is called 'alternative service[.']" Fed. R. Civ. Pro. 4(f)(3) allows for service 'by other means not prohibited by international agreement, as the court orders.'" Id. n.87. Where provided for by a Contracting State's laws, id. ¶ 96, the Hague Service Convention does not displace a Court's ability to order "substituted service" when "service may be impracticable or impossible," id. ¶ 95, or when it is otherwise justified. Id. ¶ 96.

### b. Smart Study's Interpretation of the Hague Convention Was Erroneous

The Second Circuit concluded that the objective of the Hague Convention was to create certain "appropriate" methods of service, so if a method was not listed, it is not appropriate. Smart Study, 164 F.4th at 170 (citing Water Splash, Inc. v. Menon, 581 U.S. 271, 273 (2017) ("specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies.")). However, the Convention "creates" appropriate means of service "[b]y requiring each state to establish a central authority to assist in the service of process." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 704 (1988).

Moreover, the Supreme Court's statement in Schlunk that the Hague Convention "pre-empts inconsistent methods of service" was directed at "inconsistent methods of service prescribed by state law." Id. at 699 (emphasis added). By contrast, "in actions arising under federal law,"

15

like this case, the Supreme Court held that "the manner and timing of serving process are ... controlled by the Federal Rules." *Henderson v. United States*, 517 U.S. 654, 656 (1996). Even Courts have acknowledged that "[t]his broad [preemption] pronouncement does not conclusively settle the precise questions here for neither *Schlunk* nor *Water Splash* involved Rule 4(f)(3) or email service." *Luxottica Grp. S.p.A. v. P'ships, et al.*, 2019 U.S. Dist. LEXIS 93466, at *10 (N.D. Ill. June 4, 2019).

*Smart Study*'s observation that "there would be nothing affirmative to object to," 164 F.4th at 170, misunderstood that objections are interpreted narrowly, and contracting parties are encouraged to update their declarations often and specify or qualify their objections. Practical Handbook ¶¶ 397, 409. Likewise, *Smart Study* claimed that if the Hague Convention "permit[s] email service, it is difficult to see why any party 'would ever choose slower, more costly methods' of service laid out in the Convention's text." 164 F.4th at 171. This ignores that the decision of whether to authorize alternative service under Rule 4(f)(3) is left to the sound discretion of the Court. *Peanuts*, 347 F.R.D. at 324-25.

*Smart Study* also concluded that Articles 11 and 19 of the Hague Convention confirm the listed means of service in the Hague Convention are exclusive. However, Articles 11 and 19 show the opposite. As explained in the Practical Handbook, "[t]he Convention does not preclude the use of other forms of transmission that are not provided for in the Convention, including transmission by electronic means." Practical Handbook ¶ 482. Contracting countries are free to allow additional methods of service by agreement with other countries (Article 11) or by their own internal laws (Article 19). If they did, U.S. litigants would not need to seek relief under Rule 4(f)(3), but could proceed with service under Rule 4(f)(1) or 4(f)(2). "[I]f the contracting states really wished to bind themselves to the 'limited universe of alternative service methods' available

16

in 1965" they would have done so explicitly. *See Peanuts*, 347 F.R.D. at 330.

### c. China Has Not Objected to E-mail or Electronic Publication

Defendant argues that e-mail service is prohibited based on China's objection to service by postal channels inside its territories. [42] at 5. This is incorrect. China has declined to indicate that it views postal channels to include e-mail. China, Responses 2022 Questionnaire relating to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ¶ 23.3.[4] Countries' objections to Article 10 are also construed narrowly. *See Compañía*, 970 F.3d at 1294 ("Article 10 objections notwithstanding— that the Convention does not contain a specific prohibition on this form of service."); *see also Hangzhou Chic Intelligent Tech. Co. v. P'ships, et al.*, 2021 U.S. Dist. LEXIS 64064, at *9-10 (N.D. Ill. Apr. 1, 2021) ("the Supreme Court has also explained that alternative means of service unmentioned by the Hague Convention are not prohibited if 'the receiving state has not objected to [that alternative form of service].'").

Courts have routinely recognized that China's objection to service by postal channels under Article 10 of the Hague Convention does not extend to service by e-mail. *See Kendra Scott, LLC v. The Entities, et al.*, No. 25-cv-03696 (N.D. Ill. Oct. 28, 2025) (Bucklo, J.) (ECF No. 84); *see also NBA Props.*, 549 F. Supp. 3d at 797-98. This is because postal channels and e-mail are two very different things. Postal channels are a means for delivering physical items like letters and packages through entities such as the U.S. postal service, FedEx, and UPS. E-mail is a means for transmitting digital messages electronically between devices on a network. "Furthermore, unlike postal service, email does not require physical intrusion on Chinese territory, which is China's express objection to the availability of postal service under the Hague Convention." *Hangzhou*,

---

[4] https://assets.hcch.net/docs/585e8512-8fc9-4fe9-8fe1-b61673d31b8f.pdf.

17

2021 U.S. Dist. LEXIS 64064, at *10. E-mail is also a "more reliable way of reaching overseas e-commerce vendors who must maintain a verified email address in connection with their seller profiles." *Peanuts*, 347 F.R.D. at 330. In fact, China permits e-mail service on defendants located outside of China, so it is difficult for China to object to U.S. courts ordering the same for defendants located in China. *See Milwaukee Elec. Tool Corp. v. Individuals, et al.*, 2025 U.S. Dist. LEXIS 216016, at *9 (N.D. Ill. Nov. 3, 2025); *Hangzhou*, 2021 U.S. Dist. LEXIS 64064, at *11.

Finally, even if China's objection to postal channels included e-mail, the Practical Handbook explained that "[a]n objection to postal channels as a means of service does not extend to a situation where the postal channels are used as a mere supplement to another form of service." Practical Handbook ¶ 393. Defendant does not dispute that electronic publication is not prohibited by the Hague Convention and has therefore waived that argument.

In sum, the overwhelming majority of courts have concluded that the Hague Convention does not prohibit electronic service of process. The Court should decline to follow the non-binding *Smart Study* decision. Given that electronic service is not prohibited by the Hague Convention, Defendant was properly served under Rule 4(f)(3).

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

18

Dated this 24th day of April 2026.　　　　Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
lfaria@gbc.law

*Counsel for Plaintiff Deckers Outdoor Corporation*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of April 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically notify all counsel of record.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
lfaria@gbc.law

*Counsel for Plaintiff Deckers Outdoor Corporation*

20