IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Deckers Outdoor Corporation,     )
                                 )
        Plaintiff,               )
                                 )
                                 )
        v.                       )        No. 25 C 13065
                                 )
                                 )
A AO, *et al.*,                  )
                                 )
        Defendants.              )

Memorandum Opinion and Order

Plaintiff Deckers makes shoes. It alleged that the twenty-six defendants in this case have been counterfeiting its wares. The majority of the defendants, including the instant defendant KIDMI, failed to appear or respond, and Deckers obtained a default judgment. Before me now is KIDMI's motion to vacate judgment, a subsidiary motion to strike, and a motion to stay the judgment pending the motion to vacate it. For the reasons that follow, I grant the first motion and deny the others as moot.

**I.**

Federal Rule of Civil Procedure 60(b) reads that "[o]n motion and just terms, the court may relieve a party...from a final judgment, order, or proceeding" if, among other reasons, "the

1

judgment is void." While the language of Rule 60(b) is permissive, my discretion is circumscribed under subsection (4), which governs voidness. "Once a district court decides that the underlying judgment is void, the trial judge has no discretion and must grant the appropriate Rule 60(b) relief." *Blaney v. West*, 209 F.3d 1027, 1031 (7th Cir. 2000). A judgement entered absent personal jurisdiction is void, and "no court has the discretion to refuse to vacate that judgment." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 (7th Cir. 2011).

## II.

Deckers makes and sells shoes, most famously the UGG line of footwear. It alleged that the twenty-six defendants originally named in the complaint were counterfeiting its shoes, specifically its Tasman slipper. This is a more or less prototypical version of what has become known as a "Schedule A" case.[1]

In the typical run of such a case, the plaintiff will name dozens or hundreds of defendants—usually, like those here, based out of the People's Republic of China—and take two steps *ex parte*. The first is to move for a temporary restraining order to freeze whatever assets are held in defendants' e-commerce accounts

---

[1] While Deckers has not done so here, ordinarily the defendants are listed in an attachment to the complaint known as Schedule A.

(usually operated through other companies' websites, like Amazon, Walmart, Temu, etc.). The second is to move for substituted service, generally by email. Most defendants in Schedule A cases fail to respond, others settle, and the cases generally terminate in mass default judgments. *See*, *e.g.*, *Luxottica Group S.p.A. v. Partnerships and Unincorporated Ass'ns Identified on Schedule A*, 391 F. Supp. 3d 816, 819-820 (N.D. Ill. 2019).

This case largely followed the usual pattern. Deckers filed its complaint on October 27, 2025, and moved for service by email the next day. Deckers served process by email, and twenty-five defendants—including KIDMI—failed to respond. Deckers moved for an entry of default and then a default judgment. I granted those motions as unopposed and entered a final judgment order on February 17, 2026.

A little more than month later, on March 26, 2026, KIDMI filed a motion to vacate the judgement, arguing that service had been improper, meaning I lacked personal jurisdiction and that the judgment was void. There followed a related declaration from Deckers's counsel and a motion to strike a paragraph of that declaration, both of which I will address on the way to a decision as to KIDMI's motion to vacate.

### III.

The outcome of the instant motion turns on an issue that has plagued Schedule A cases in this district and elsewhere, which is how to effect service of process abroad, and especially in the People's Republic of China. Federal Rule of Civil Procedure 4(h)(2) allows service on a foreign corporation by any manner prescribed in Rule 4(f). The first subsection of Rule 4(f) permits service of process "by any internationally agreed means...that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."[2] Rule 4(f)(3) then provides a broad fallback, permitting service "by other means not prohibited by international agreement, as the court orders." And the Seventh Circuit "has long recognized that valid service of process is necessary in order to assert personal jurisdiction over a defendant." *Mid-Continental Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).

---

[2] The Hague Convention is codified at 20 U.S.T. 361, but its text can be found (along with lists of member states and their declarations, committee reports, and other information) at the website of the Hague Conference on Private International Law. https://www.hcch.net/en/instruments/conventions/full-text/?cid=17.

**A.**

Ninety-three states have become participating members of the Hague Convention, including the United States and China. Where service falls within the scope of the Convention, its application is mandatory. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). Under Article 1, service falls within the scope of the Convention when "there is occasion to transmit a judicial or extrajudicial document for service abroad," and falls outside the scope of the Convention "where the address of the person to be served with the document is not known." Articles 2-9 of the Convention outline the ordinary route for service of process: each member state designates a "Central Authority" which will receive requests for service of process from abroad and, if such requests meet various requirements, will then effect service on the domestic litigant. Article 10, though, outlines an alternative: "Provided the State of destination does not object, the present Convention shall not interfere" with the service of process by "postal channels, directly to persons abroad." China, among other states, has objected to service of process under Article 10.[3] Articles 11 and 19 then outline two other ways for

---

[3] Declaration, Article 10, People's Republic of China, Hague Conference on Private International Law.

member states to either bilaterally or unilaterally permit methods of service of process "other than those provided for" in Articles 1–10 within their own borders.

Courts in this district and elsewhere have split over whether this framework allowed for service of process in China by email on a defendant with a known address.[4] Summarized, the majority view was that the "postal channels" in Article 10 did not include email, such that the Chinese government had made no specific objection to that method. Under Rule 4(f)(3) then, email service was "not prohibited by international agreement," and could be ordered as long as, in the court's view, it was likely to result in actual notice.[5] The minority view was that the Convention was not just

---

https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn.

[4] *See Peanuts Worldwide LLC v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, 347 F.R.D. 316 (N.D. Ill. 2024), and *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, 391 F. Supp. 3d 816, 821 (N.D. Ill. 2019), for two paradigmatic examples of each camp in the Northern District of Illinois, with *Peanuts* allowing service by email and *Luxottica* barring it.

[5] While the Seventh Circuit's decision in *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.* moots the issue, the tenability of the contention that "postal channels" does not include email has eroded somewhat. ---F.4th---, 2026 WL1502198, *1 (7th Cir. May 29, 2026).

The Special Commission on the Practical Operation of the Hague Convention, which publishes regular "Conclusions and Recommendations" on the operation of the Convention, and which

mandatory but exclusive. Articles 11 and 19 made plain that if member states wished to use any method of service not specified in Articles 2-10, they would have to do so through Articles 11 and 19; those provisions would otherwise be superfluous. Whether or not email was included in the "postal channels" in Article 10 was immaterial—if it was, then the Chinese had objected and it was prohibited; if it was not, then it was excluded because it was not mentioned elsewhere in the text.

The Seventh Circuit has now provided definitive guidance and come down on the side of the minority, along with the Second and Third Circuits. *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.*, ---F.4th---, 2026 WL 1502198, *1, *5-*6 (7th Cir. May 29, 2026); *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 170-72 (2d Cir. 2025); *SEC v. Lahr*, 2024 WL 3518309, *1 (3d Cir. July 24, 2024). In line with the thinking above, the Seventh Circuit found the Hague Convention to be mandatory where applicable and to exclusively list the permissible methods of service between parties in member states. *Kangol*, 2026 WL 1502198, at *5-*6. And

---

includes Chinese delegates, concluded relatively recently that "Article 10(a) includes transmission and service by email." July 2024 Conclusions and Recommendations, HCCH, ¶ 105, https://assets.hcch.net/docs/6aef5b3a-a02c-408f-8277-8c995d56f255.pdf.

7

the court found that it need not determine whether email is a "postal channel" under Article 10 because email service in China would be barred either by the Convention's exclusivity if it was and by China's objection if it was not. *Id.* at \*6.

**B.**

The Seventh Circuit's decision in *Kangol* resolves the main question presented by the instant motion in KIDMI's favor. While the parties devoted the vast majority of their filings to that debate, there remain two threshold issues and a handful of subsidiary ones to resolve. The first of these questions is whether KIDMI filed its motion to vacate too late, and the second is whether Deckers could skirt the Hague Convention by showing that KIDMI's address is "not known" under Article 1. The subsidiary matters involve Deckers's efforts to prove the Convention's non-applicability.

**1.**

Rule 60(c)(1) provides that a "motion under Rule 60(b) must be made within a reasonable time." Long practice and case law held that a defendant wishing to challenge personal jurisdiction could do in a Rule 60(b)(4) motion without regard to the time limit in Rule 60(c)(1). *See, e.g.*, *Philos Techs.*, 645 F.3d at 856–57; *see also* 11 Wright & Miller, Fed. Prac. & Proc. § 2862 (3d ed.). Recently, though, the Supreme Court has clarified that Rule

8

60(c)(1)'s limit extends to Rule 60(b)(4) motions, although the Court left the determination of reasonableness to a case-by-case analysis by the district courts. *Coney Island Auto Parts Unlimited, Inc. v. Burton Trustee for Vista-Pro Automotive, LLC*, 607 U.S. 155, 161–62 (2026).

Deckers's argument proceeds like this. Even if improper for service of process, KIDMI received its email and had actual notice of the case on December 26, 2025. KIDMI had actual notice of the final judgment order I entered from at least February 19, 2026. And then despite that notice, KIDMI failed to move to vacate for just over a month, until March 26, 2026. Deckers contends that that length of time was unreasonable, citing mostly to case law having to do with time limits on motions to vacate on grounds other than voidness. ECF 52 at 11–12. Though not stated explicitly, Deckers's fundamental proposition is that I should read *Coney Island* as extending the case law governing Rule 60(c)(1)'s "reasonable time" limit for other grounds under Rule 60(b) to motions to vacate judgments as void under Rule 60(b)(4).

I disagree with Deckers that slightly more than a month is an unreasonable time to move to vacate a void overseas judgment. First, the Court did not extend the relatively short deadlines for motions to vacate under other Rule 60(b) grounds to the voidness context. Instead, the Court merely noted that the six-year delay

in that case was unreasonable (and that the defendant's motion would likely have been barred by *laches* irrespective of Rule 60(c)) and acknowledged that "in the context of a default judgment, it might be reasonable for a defendant not to seek relief before learning about a plaintiff's attempted enforcement." *Coney Island*, 607 U.S. at 584. Second, in *Kangol*, as here, a Chinese defendant "filed its motion to vacate no more than two months" after the U.S. plaintiff attempted enforcement, and the Seventh Circuit found that delay reasonable. 2026 WL 1502198, at *3.

**2.**

Next to address is the applicability of the Hague Convention, and its email prohibition, in the first place. As I stated above, under Article 1, the Hague Convention applies if the "there is occasion to transmit a judicial...document for service abroad," and "shall not apply where the address of the person to be served with the document is not known." Deckers has argued that the Hague Convention is not applicable under either clause.

In attacking the Convention's applicability under the first clause of Article 1, Deckers contends that service by email does not involve the transmission of a document abroad. Firstly, the documents that Deckers was serving were hosted on a website on a U.S. server, and Deckers was only emailing a link to them. As such, the argument goes, the documents remained in the United States and

were never transmitted. And the email which Deckers did transmit did not count. "This is because e-mail is electronic data on a network, while a 'document' as contemplated by Article 1 of the Hague Convention refers to tangible instruments." ECF 52 at 18. Inasmuch as the Convention was signed in 1965, this argument proceeds, "[t]he drafters could not have contemplated the term 'document' to include e-mail," so while the email may have been "transmit[ed]...abroad," no document was. *Id.* The Seventh Circuit addressed this lawyerly approach in *Kangol*:

> [W]e reject this argument as hardly credible. Kangol acknowledges that it sent an email to an entity located in China and that the email contained a link to copies of the complaint, temporary restraining order, summons, and other relevant documents. This constitutes service of process...[t]he fact that those documents were sent through an emailed link makes no difference.

2026 WL 1502198, at *4.

### 3.

Deckers's more substantial contention is that the Convention does not apply under Article I because KIDMI's address is "not known."

Courts in this country have applied a simple standard to the known address question presented by Article 1—to show that a defendant's address is "not known," the plaintiff "must make reasonably diligent efforts to ascertain" it or, if an address is provided, to "verify defendant's mailing address." *NBA Props.,*

*Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021), *aff'd sub nom. NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022). If after a reasonably diligent effort the plaintiff cannot either ascertain or verify the address, then it is "not known" and the court may order substituted service pursuant to Rule 4(f)(3). *Id.*

KIDMI's Amazon store page displays an address—it is included in an image of that page attached to the complaint, ECF 1-1 at 36—but Deckers writes that it "investigated the purported address listed on Defendant's store and was unable to locate Defendant at that address." ECF 52 at 17. In service of that contention, Deckers filed a declaration alongside its response to KIDMI's motion to vacate in which one of its attorneys averred that he "or someone working under [his] direction" had "translated [KIDMI's Chinese-language address from its Amazon store page] to English using Google" and had then searched those translations on Google Maps, Bing Maps, and Baidu Maps without discovering a listing for KIDMI. ECF 53 at 1–4.

This declaration resulted in a run of subsidiary issues. First, KIDMI moved to strike the declaration, arguing (1) that the address listed on its Amazon store was provably genuine, attaching a declaration and a Chinese business license with the same address; and (2) asserting various grounds under which a particular

12

paragraph in the declaration was inadmissible. Second, KIDMI, in its reply in support of its motion to vacate, cited some of the facts from its motion to strike, resulting in Deckers alleging the improper inclusion of new arguments based on new facts in a reply brief in Deckers's response in opposition to KIDMI's motion to strike the Gaudio declaration. And third, Deckers independently argued that certain of the attachments to the motion to strike were inadmissible for reasons relating to their translation from Chinese to English.

None of this is germane. As I see it, the question asked by the Hague Convention and Rule 4 is whether the defendant's address was unknown not at the time the defendant raises jurisdiction but at the time the plaintiff moved for substituted service. And here, the answer is no.

In Deckers's motion for service by email, it focused on the convenience and alleged necessity of email service rather than the requirement under the Convention that the recipients' physical addresses be unknown:

> Electronic service is appropriate and necessary in this case because off-shore e-commerce store operators offering for sale products using infringing intellectual property typically...rely primarily on electronic communications to communicate with their third party service providers and customers, demonstrating the reliability of this method of communication by which Defendants may be apprised of the pendency of this action...Authorizing service of process solely via e-mail and electronic publication will benefit all parties

13

> and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

ECF 12 at 1–2. Deckers pointed to no actual efforts to find or verify KIDMI's (or any other defendant's) address, instead asserting that, because counterfeiters "provide false, misleading and/or incomplete names and physical address information...even if a physical address is available, it is not a reliable or the best means for providing notice to Defendants." *Id.*

That is, Deckers's motion evinces, rather than attempt to ascertain or verify KIDMI's address, only reasons to avoid doing so. That is not enough. *Lojek v. Henan Ocean Power Housewares Co. Ltd.*, 818 F. Supp. 3d 1245, 1253 (W.D. Wash. 2026) ("Rule 4's various requirements for service of process are more than mere 'technicalities,' and the desire for expedience and efficiency alone is not sufficient to justify alternative service.") (citations omitted). Like the court in *NBA Properties*, I find that Deckers's "bare assertions regarding the reliability of Defendant's publicly available address are not a substitute for actual diligence." 549 F. Supp. 3d at 796; *see also Hyper Ice, Inc.*, 2025 WL 4114192, at *5 (collecting opinions analyzing reasonable diligence in Schedule A cases); *Compass Bank v. Katz*, 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (same).

14

**IV.**

I grant KIDMI's motion to vacate. Because the order of judgment is vacated and because it was vacated independent of KIDMI's motion to strike, I deny both that motion and KIDMI's motion to stay as moot.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge
Dated: June 23, 2026

15